UNITED STATES, Plaintiff,

v.

CROMPTON CORP. Defendant.

No. CR 04–0079 MJJ.

United States District Court,
N.D. California.

Aug. 22, 2005.

Jeane Hamilton, U.S. Department of Justice, San Francisco, CA, for Plaintiff.

Jim Walden, O'Melveny & Myers LLP, New York, NY, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO UNSEAL THE REQUESTED DOCUMENTS AND DENYING DEFENDANT'S REQUEST TO HAVE NAME REDACTED

JENKINS, District Judge.

### INTRODUCTION

Before the Court is the Government's motion to unseal the Crompton Plea Agreement ("Plea Agreement"), the transcript of the sentencing hearing, and the United States' Brief in Support of Its Motion to Unseal Certain Documents. While Defendant Crompton Corporation ("Defendant") does not oppose Plaintiff's motion to unseal the documents, it seeks to have Vincent A. Calarco's name redacted from any documents prior to having them unsealed. The Court has read and considered the memoranda filed by the parties and heard oral argument on the motion. For the following reasons, the Court GRANTS the Government's motion to unseal the requested documents and DENIES Defendant's request to have Calarco's name redacted.

### FACTUAL BACKGROUND

On March 15, 2004, the U.S. Department of Justice, Antitrust Division filed a one-count information charging Defendant with fixing the prices of certain rubber chemicals in violation of the Sherman Antitrust Act. On May 27, 2004, Defendant pled guilty to that charge and was sentenced to pay $50 million pursuant to the terms of the Plea Agreement accepted by the Court. During sentencing the Government requested the hearing be closed due to a substantial likelihood that other ongoing investigations in which Defendant was providing assistance would be jeopardized if the Plea Agreement was made public at that time. Additionally, Defendant requested the transcript of the sentencing be sealed to conceal the existence of those investigations. The Court granted the motions. Neither the Government nor Defendant made a motion, and the Court issued no order, to seal the Plea Agreement. However, the Plea Agreement was filed under seal.

### ANALYSIS

Since, Defendant does not oppose the Government's motion to unseal the documents, the Court focuses strictly on the matter of redaction. Thus, the sole issue before the Court is whether listing an unindicted person's name in a plea agreement is the functional equivalent of listing an unindicted coconspirator's name in an indictment. Defendant argues that failing to redact Calarco's name from the Plea Agreement would violate his Fifth Amendment rights by smearing his name and stigmatizing him as a criminal without any forum for vindication. Defendant claims that listing Calarco—along with two other executives who were later indicted and found guilty—as being exempt from a nonprosecution guarantee creates a strong inference that he is a conspirator to the antitrust violation even though he was never indicted. Accordingly, Defendant contends that to publicize Calarco's name in connection with the antitrust violation would be the functional equivalent of publishing the name of an unindicted coconspirator. The Government, on the other hand, argues that the policy considerations behind redacting a name from an indictment are quite distinct from the policy considerations for full publication of a plea agreement.

The Court finds that the documents should be unsealed without redaction for three reasons: (1) the policy considerations that dictate redaction of an unindicted coconspirators name from an indictment do not apply in the context of plea agreements; (2) the document was mistakenly sealed from the outset and Defendant's ability to raise the instant motion is nothing but a fortuitous event; and (3) absent a compelling interest, the First Amendment creates a strong presumption in favor of the public's right to know.

## A. Plea Agreement Versus Indictment

■ District courts cannot refuse to expunge the name of an unindicted coconspirator from an indictment because no government interest is sufficient to justify "stigmatizing private citizens as criminals" without affording them "access to any forum for vindication." *United States v. Briggs,* 514 F.2d 794, 804 (5th Cir.1975); *see also United States v. Chadwick,* 556 F.2d 450 (9th Cir.1977). But a plea agreement is not the same as a criminal indictment; instead it is "contractual in nature and [is] measured by contract law standards." *See United States v. Clark,* 218 F.3d 1092, 1095 (9th Cir.2000) (quoting *United States v. Keller,* 902 F.2d 1391, 1393 (9th Cir.1990)).

■ The underlying policy for redacting an unindicted coconspirator's name from an indictment is to avoid the "very real stigmatization" that they might suffer. *United States v. Anderson,* 55 F.Supp.2d 1163, 1169–70 (D.Kan.1999). Moreover, since the government will not bring an indictment against the coconspirator, naming them serves no purpose other than to publicly smear the individual who "has not been provided a forum in which to vindicate his rights." *In re*

*Smith,* 656 F.2d 1101, 1106 (5th Cir.1981). As such, naming the coconspirator without an indictment denies them due process rights embodied in the Fifth Amendment. *Application of Jordan,* 439 F.Supp. 199, 209 (S.D.W.Va.1977).

■ But such policy implications are not present when a plea bargain is signed. The Plea Bargain here makes no allegations that those named as exempt from the prosecutorial immunity are coconspirators; nor has Calarco been indicted or listed in any other indictment flowing from the investigation. The contract is between two parties; its function is to define with as much specificity as possible the obligations and benefits upon which the two parties have agreed. Those named as exempt from the non-prosecution guarantee could have been named because they had made known in pre-filing negotiations that they would not cooperate with the government even with such a guarantee. The sole purpose of listing Calarco's name is to indicate that the non-prosecution protection of Plea Agreement does not apply to him and nothing more. The Plea Agreement does not allege criminal activity on Calarco's part nor does it implicate Calarco in any wrong-doing. Accordingly, no stigma or public smearing occurs by releasing their names and no due process rights are violated since Calarco can not argue he needs to seek vindication since he entered the contractual agreement with full knowledge that it was to be made public.

As additional support for the proposition that names released in a plea agreement and those released in an indictment should be treated differently with respect to redaction, Defendant cites only cases involving an actual indictment that has included the name of an unindicted coconspirator.[1]

1. *See In re Smith,* 656 F.2d at 1101 (at public plea hearing on bribery charge, prosecutor singled out unindicted individual as person receiving the bribe); *Chadwick,* 556 F.2d at

Here, no indictment has been returned against Calarco nor is Calarco's name listed in any other indictment in this matter. In order to bolster the contention that releasing Calarco's name in the Plea Agreement is tantamount to releasing his name in an indictment, Defendant cites several speeches made by Justice Department officials about the purpose of "carving out" executives from non-prosecution guarantees and claims that these speeches indicate that the Justice Department lists the names specifically for the stigmatizing impact. In one speech, cited by Defendant, the official stated, "Imagine . . . having key members of your senior management—individuals who are the face and link of the company to its customers—*indicted and labeled as international fugitives.*" (Opp. at 3) (emphasis altered from brief). But, this speech shows the diametric opposite of what Defendant contends. The speech does not, as Defendant claims, reflect that the "carve out" exception itself is the stigmatizing action, but instead that the stigma and punitive damage comes from the actual *indictment.*

Additionally, the Court notes that the Plea Agreement was reached after significant negotiations between the parties to determine which Crompton executives were to receive non-prosecution protections and which were not. Since the Plea Agreement grants immunity to all other Crompton employees who cooperate, it is important for those employees to know who is and who is not covered by the non-prosecution protection in order to make informed decisions about their constitutional rights—such as whether to assert their Fifth Amendment right to remain silent. In order to facilitate these determinations, the Antitrust Division has consistently identified, in its corporate plea agreements, those individuals not covered. During the last ten years, the Antitrust Division has filed more than twenty cases in this district, and no court has ordered a plea agreement to be sealed or the names of any individuals to be redacted or sealed.

The Plea Agreement is nothing more than a contract which identifies the mutual understanding of the parties and provides guidance to other employees on how to assert their constitutional rights. It imputes no guilt or criminal activity to those named as exempt from the non-prosecution protections. Accordingly, the Government has not identified Calarco as an "unindicted coconspirator" and the *Chadwick* line of cases is inapplicable.

## B. The Plea Agreement Was Mistakenly Sealed From The Outset.

Even if the Court were inclined to believe that the *Chadwick* line of cases should apply, its application in the instant context would be inappropriate. The sentencing hearing transcript and the pleadings filed with the Court show that only three documents were to be sealed upon request of counsel: the Crompton Cooperation Agreement and the Memorandum regarding Substantial Assistance, both filed under seal before sentencing, and the Sentencing Transcript, filed under seal at the end of the proceedings. Neither the Government nor Defendant requested that the Plea Agreement be sealed. Moreover, the fact that the Plea Agreement and the Crompton Cooperation Agreement were filed as two separate documents, of which only the latter was requested sealed, lends further credence to the intent of the parties that the Plea Agreement itself be pub-

450 (indictment named individual as unindicted participant in crime); *Briggs,* 514 F.2d at 805 (same); *Anderson,* 55 F.Supp.2d at 1165–66 (identification of unindicted coconspirator in pre-trial motion); *Application of Jordan,* 439 F.Supp. at 209 (indictment named individual as unindicted participant in crime).

licly released in full. Additionally, the Plea Agreement itself does not include any provisions for its sealing and neither party argues that such an agreement was reached. Accordingly, the Plea Agreement should not have been sealed and its current state as such appears to have been in error. Thus, a request for redactions from the Plea Agreement is merely taking advantage of a fortuitous situation that should never have arisen in the first place.

## C. The First Amendment Creates A Strong Presumption of Openness.

██ Finally, even if the Court were inclined to believe that the Plea Agreement should have been sealed or that the merely fortuitous event of having the Plea Agreement sealed should allow for redaction prior to its unsealing, the public interest as dictated by the First Amendment requires the Plea Agreement be made available to the public in its entirety. Absent a compelling interest, the First Amendment grants the public and the press access to court proceedings and documents, including plea agreements. *Oregonian Publishing Co. v. U.S.D.C. for the Dist. of Or.*, 920 F.2d 1462, 1465 (9th Cir. 1990). The public access is crucial because the criminal process must " 'satisfy the appearance of justice' and the appearance of justice can best be provided by allowing people to observe it." *Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555, 571–72, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (quoting *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954)).

██ Additionally, the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771, provides that in proceedings involving an offense against a crime victim, the court "shall ensure" the victim is afforded the "right not to be excluded" from any public court proceedings. 18 U.S.C. § 3771(a)(2)-(3), (b). A victim "is a person directly and proximately harmed as a result of the commission of a Federal offense. . . ." 18 U.S.C. § 3771(e).

Defendant requests redaction of Calarco's name because it wants to shield his identity from civil plaintiffs that have sued Defendant in dozens of lawsuits across the country. Additionally, Defendant believes that releasing Calarco's name, due to his high visibility and close connection to Defendant, will negatively impact their share price. The Government responds that if disclosure of Calarco's name is important enough to affect decisions in capital markets, it is important that the information be made public and available to the marketplace. Defendant's request amounts to a protectionist stance by the Court toward Defendant at the expense of shareholders and potential investors. The Court agrees that such a stance is untenable and would only serve to conceal from the true victims of the crime, the public at large, the fairness and transparency of the sentencing.

Moreover, redacting Calarco's name would violate the Crime Victims' Rights Act. Here, the plaintiffs in the additional civil lawsuits filed against Defendant are those who were directly and proximately harmed as a result of the commission of the antitrust violation. Therefore, the Court should be particularly sensitive to ensuring they are given full access to the proceedings and the Plea Agreement. Accordingly, the Court finds that redacting Calarco's name from the Plea Agreement would violate the Crime Victims' Rights Act.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Unseal Certain Documents and **DENIES** Defendant's

request to redact Calarco's name from those documents prior to unsealing them.[2]

**IT IS SO ORDERED.**

**2.** The Court also DENIES Defendant's request to redact Calarco name for all of the reasons articulated by the Court during oral argument on July 28, 2005.